UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TERESA A. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:10-CV-164 |
| v. | ) |
| | ) *Collier / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Teresa A. Jones ("Plaintiff") was denied disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner" or "Defendant"), and she now appeals that denial.[1] Plaintiff contends that the Administrative Law Judge ("ALJ") who heard her claim erred by failing to elicit her testimony during the hearing. According to Plaintiff, that failure violated both the Commissioner's regulations and her due process rights. Plaintiff has moved for judgment on the pleadings, seeking remand to the Commissioner for a "full and fair and complete hearing" [Doc. 12].[2] Defendant, in response, has moved for summary judgment [Doc. 17]. For the reasons stated below, I **RECOMMEND** that Plaintiff's motion for judgment on the pleadings [Doc. 12] be **DENIED**; Defendant's motion for summary judgment [Doc. 17] be **GRANTED**; the decision of Commissioner be **AFFIRMED**; and this action be **DISMISSED WITH PREJUDICE**.

---

[1] This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), which provide for judicial review of the final decision of the Commissioner denying DIB and SSI benefits.

[2] Plaintiff appears to have inadvertently filed a motion for extension of time instead of her motion for summary judgment [Doc. 11], but her memorandum [Doc. 12] clearly states the relief she seeks, and Defendant has responded as though her request for relief is properly before the Court. The Court therefore construes the memorandum as a motion for judgment on the pleadings.

## I. BACKGROUND

### A. Medical Evidence

Because she challenges the conduct of her hearing, this summary of facts will relate primarily to the hearing itself. Some familiarity with Plaintiff's allegations, however, may be necessary to fully understand the parties' arguments. Plaintiff seeks disability benefits for a closed period beginning with a car accident that occurred on July 12, 2004, and ending on December 19, 2006, when she told her physician that she was ready to discontinue pain management (Tr. 8, 17, 116-17, 141, 399). Plaintiff was treated for back and hip pain during this time, but the record also contains evidence of treatment for sleep apnea, insomnia, and depression (Tr. 118-24, 374-85).

Prior to her alleged onset of disability, in 2002, Plaintiff received treatment for back and hip pain. (Tr. 134, 233-302). An MRI confirmed mild facet arthrosis in the lumbar spine (Tr. 133). Her physical therapy notes during that time also show diagnoses of sciatica and trochanteric bursitis (Tr. 233-302). David Lowry, D.O., believed that Plaintiff's back pain was caused by an altered gait, secondary to her hip pain (Tr. 134). In July 2003, Plaintiff sought emergency room treatment for right hip and sacroiliac ("SI") joint pain, but her x-rays were normal (Tr. 147-48). Throughout 2002 and 2003, Plaintiff was working as the executive director of a nonprofit organization, which is a skilled, sedentary job (Tr. 9, 71).

In July 2004, Plaintiff suffered injuries in a car accident (Tr. 70, 141-42), at which time she stopped working (Tr. 56, 70). Plaintiff's x-rays showed no bone, joint, or soft tissue abnormalities (Tr. 145). After being treated in the emergency room, Plaintiff began seeing Paul Apyan, M.D., who assessed her with "multiple contusions slowly getting better" (Tr. 128). Plaintiff received physical therapy for back pain and lumbar strain between August and October 2004, and for neck pain

between November 2004 and March 2005 (Tr. 165-206, 210-31). During the course of her treatment with Dr. Apyan, Plaintiff reported improvement with this physical therapy regimen, and in April 2005, she told Dr. Apyan she was "100% better" (Tr. 125-28). Despite her reported improvements, however, Plaintiff sought a "second opinion" from Dr. Lowry in April 2005 due to complaints of back pain (Tr. 133, 162). Based on his examination, a bone scan, and a February 2005 MRI, Dr. Lowry diagnosed mild facet arthropathy, low back pain, SI joint syndrome, and greater trochanteric bursitis (Tr. 130, 133). Dr. Lowry referred Plaintiff for another round of physical therapy and recommended facet injections and SI joint injections (Tr. 130, 162-64).

In June 2005, Plaintiff began seeing Thomas Miller, M.D., for pain management (Tr. 370). Plaintiff told Dr. Miller that her pain was mild, but that it interfered with "most" of her daily activities and sleep when present (Tr. 370). Dr. Miller prescribed hydrocodone with acetaminophen and administered the facet injections recommended by Dr. Lowry (Tr. 372). The following month, Plaintiff reported that her pain was "much less severe" and did not interfere with her daily activities (Tr. 367). Again in August 2005, she told Dr. Miller that her pain was "somewhat less severe" (Tr. 364). In September and October, her pain was "somewhat more severe," a seven out of ten, and Dr. Miller added Valium to her medications, cautioning her not to drive, and performed an SI joint injection (Tr. 356, 358, 360, 361). Not long after that, he added Avinza (morphine sulfate) to her list of medications (Tr. 345). Between October 2005 and December 2006, Plaintiff's pain was typically less severe (Tr. 327-54, 399-410), and she reported good control of pain from her medications, without side effects (Tr. 327, 330, 337, 340, 399, 405). She also consistently told Dr. Miller that her pain, while noticeable, did not significantly interfere with her daily activities (Tr. 330, 337, 340, 343, 358, 361, 364, 367; *but see* Tr. 333). In November 2005, Plaintiff was discharged

3

from physical therapy with "decreased" pain (Tr. 150). On one occasion, Plaintiff's pain became "almost unbearable" after a physical therapy appointment (Tr. 333), but after receiving an epidural injection, it was "much less severe" again (Tr. 330). By December 19, 2006, Plaintiff reported she had "decided to come off all pain med[ications]" (Tr. 399). Plaintiff does not allege she was disabled after December 19, 2006.

No treating or examining physician offered an opinion with respect to Plaintiff's functional limitations, but two physicians offered opinions based on reviews of Plaintiff's file. In July 2006, C. Hancock, M.D., opined that Plaintiff's reported symptoms were not fully credible because it would be "unusual" for a motor vehicle accident to cause severe symptoms after two years "without some significant findings" (Tr. 326). Dr. Hancock acknowledged Plaintiff's mild arthropathy, but stated that her 2005 MRI was "essentially negative for any severe abnormality" (Tr. 320). Dr. Hancock also questioned whether the continued use of narcotic pain relievers was appropriate (Tr. 326). According to Dr. Hancock, Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and could sit for six hours and stand or walk for six hours during a normal workday (Tr. 320). In February 2007, Nathaniel Robinson, M.D., offered a slightly more restrictive opinion (Tr. 390-97). Dr. Robinson believed that Plaintiff's subjective complaints were only "partially credible" (Tr. 395). In his view, Plaintiff could lift only 20 pounds occasionally and ten pounds frequently, but Dr. Robinson agreed with Dr. Hancock that Plaintiff could sit for six hours and stand or walk for six hours during a workday (Tr. 391).

**B.     Administrative Proceedings**

In May of 2006, just before she began pain management with Dr. Miller, Plaintiff applied for disability benefits, alleging she was disabled due to "nerve damage" stemming from the 2004 car

accident (Tr. 56, 70). Specifically, Plaintiff alleged she could not drive to work while taking her medications and her judgment was impaired, but she could not sit or walk without those medications (Tr. 70). Hydrocodone, according to Plaintiff, made her "fuzzy" and impaired her judgment and prevented her from driving (Tr. 76). Avinza, she said, made her "nervous," impaired her judgment, and made her "unsteady" (Tr. 76). She also alleged that some of her medications made it hard for her to read and write (Tr. 78). In a pain questionnaire, Plaintiff stated that her medications relieved her pain, but "not totally," and that they caused side effects, but that she "c[ould] not presently think of side effects" (Tr. 97). Despite medications, physical therapy, injections, a TENS unit, and heating pad, Plaintiff stated that "all [her] activities [had] stopped" since the pain began (Tr. 98). She stated she did not walk, shop, do chores, drive, or socialize (Tr. 98). Plaintiff's claim was denied initially, and on reconsideration, based on the agency's reasoning that Plaintiff was physically able to perform her past work and had not provided enough information to evaluate her mental condition (Tr. 27, 33).

Plaintiff, with the assistance of counsel, requested a hearing before an ALJ, which was set before ALJ Eduardo Soto on April 29, 2008 (Tr. 34, 41). Prior to the hearing, on April 16, 2008, Plaintiff's counsel informed the ALJ by letter that she was withdrawing as Plaintiff's representative because she had been unable to reach Plaintiff (Tr. 54). Their relationship was apparently repaired, however, because Plaintiff's counsel submitted a brief prior to the hearing (Tr. 116-17). The hearing began ten minutes early on the scheduled date, but neither Plaintiff nor her counsel was in the hearing room (Tr. 7, 41). ALJ Soto stated that Plaintiff was unrepresented and not present, and he anticipated that Plaintiff would request a "postponement" of the hearing after the fact (Tr. 7). ALJ Soto then began to question the vocational expert ("VE") about Plaintiff's work history (Tr. 7). Just as ALJ Soto announced that he would continue the hearing "pending [Plaintiff's] appearance," the

5

transcript states that "there ensued an off-the-record discussion." (Tr. 7). The hearing was then reconvened with Plaintiff and her counsel (Tr. 7-8).

The hearing itself was quite short (Tr. 7-10), and it is therefore reproduced in relevant part here:[3]

> ALJ: [To Plaintiff's counsel], any objection to the admission of the proposed exhibits?
>
> ATTY: No, Your Honor.
>
> ALJ: Thank you for the brief. . . . All the argument, all the relevant documents are noted in the brief?
>
> ATTY: Yes, sir.
>
> . . .
>
> (The Claimant, TERESA JONES, having first been duly sworn, testified as follows:)
>
> ATTY: Did you work any at all between July of '04 and December of '06?
>
> CLMT: No, sir.
>
> ALJ: Did you client actually went back to work in December of '06?
>
> ATTY: She actually returned to work briefly in January. Worked for about a month and a half and she is really has not worked full-time since then, but she believes that she could if she could find the appropriate kind of employment, and so she's being very honest about it.
>
> ALJ: Okay, that's fine.
>
> CLMT: I.
>
> ATTY: Do you need to? You've looked and done volunteer work?
>
> CLMT: Yes, yes.

---

[3] Typographical errors from the transcript have not been corrected.

ALJ: All right. Let's go through past work. . . .

[The VE testified that Plaintiff's past employment was sedentary and skilled.]

ALJ: All right. Anything else?

ATTY: Nothing, Your Honor.

ALJ: All right, I'll look at the case this afternoon.

. . .

ATTY: . . . Thank you, Your Honor.

ALJ: You are welcome.

CLMT: Thank you.

ALJ: Thanks.

CLMT: Have a nice day.

ALJ: You too. I do need –

**C.     ALJ's Findings**

After the hearing, the ALJ issued a written opinion in which he found that Plaintiff had not been disabled during the time period she alleged (Tr. 17-23). As relevant here, the ALJ found that Plaintiff had several physical impairments—facet arthrosis, trochanteric bursitis, and SI joint syndrome—but that she still retained the residual functional capacity ("RFC") to perform sedentary work (Tr. 19, 21). The ALJ noted that Plaintiff's allegations of pain and side effects were fairly severe, but he found they were not credible to the extent they would have prevented her from performing sedentary work (Tr. 22).

**II.    ANALYSIS**

Plaintiff argues that this hearing was not "full and fair" because it did not afford her a

meaningful opportunity to be heard. Specifically, Plaintiff contends, the ALJ could not have properly concluded that she was not credible without first eliciting her testimony regarding her subjective complaints. Plaintiff characterizes the ALJ's failure to do so as both a violation of agency regulations and her due process rights.

Judicial review of Plaintiff's challenges is somewhat different than the ordinary disability case. The court must affirm the Commissioner's factual findings unless they are unsupported by substantial evidence. 42 U.S.C. § 405(g). In making those findings, however, the agency decisionmaker must follow its own regulations. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Whether a procedural error is reversible depends in part on the purpose of the regulation—whether it was intended to confer a "substantial procedural right" or was instead a mere "adjudicatory tool" intended merely to help the agency evaluate claims in an orderly manner. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 656-58 (6th Cir. 2009). If the former, only a *de minimis* error can avoid reversal.[4] *Id.* If the latter, then the decision will stand unless the claimant was prejudiced by the error.[5] *Id.*

In addition, an agency's failure to follow its own regulations may violate the claimant's constitutional due process rights. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009). Similarly, in an appropriate case, due process concerns might be implicated by the agency's failure

---

[4] The *Rabbers* court did not precisely define the class of *de minimis* errors, but indicated that an error might be *de minimis* if the decisionmaker met the goal of the regulation, though not its letter. *Id.* at 656 n.8.

[5] In this context, an error will be considered prejudicial where, if corrected, the claimant might have been awarded benefits. In contrast, an error will be considered harmless if the ALJ's other findings (which were themselves supported by substantial evidence) were dispositive of the claim or if the evidence simply could not have supported the contrary result. *See generally id.* at 657-61.

8

to provide some additional procedural safeguard beyond what is required by its regulations. *See Richardson v. Perales*, 402 U.S. 389 (1971) (entertaining, but rejecting, such a challenge). Due process challenges are reviewable under 42 U.S.C. § 405(g) along with the Commissioner's substantive decision to deny benefits. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

In the context of social security adjudications, due process requires that the claimant receive a "full and fair" hearing. *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010). To determine whether a specific procedural safeguard was necessary to protect the claimant's right to a "full and fair" hearing, courts ask whether the value of that safeguard in preventing erroneous deprivations outweighs its marginal cost, in light of the private interests that might be deprived. *Id*. (*quoting Matthews*, 424 U.S. at 335).

### A. Did the Hearing Violate Agency Regulations?

Plaintiff argues that the hearing violated two agency regulations. She first cites 20 C.F.R. § 404.950(a), which provides that "[a]ny party to a hearing has a right to appear before the [ALJ], . . . in person . . . , to present evidence and to state his or her position." This right to appear may be waived. *Id.* § 404.950(b). Plaintiff next cites 20 C.F.R. § 404.944, which describes the general procedures used in disability hearings: "At the hearing, the [ALJ] looks fully into the issues, questions [the claimant] and the other witnesses, and accepts as evidence any documents that are material to the issues."

The courts have elaborated on what is required of ALJs during disability hearings. The claimant bears the burden of proof of disability, and the ALJ is the adjudicator. *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, (6th Cir. 2008). Because disability hearings are non-adversarial, however, the ALJ also bears the duty to develop the facts. *See Richardson*, 402 U.S. at 403, 410;

*Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990). The parameters of this duty vary depending on whether the claimant is assisted by counsel. The ALJ's "basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant" appears at the hearing. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (*quoting McConnell v. Schweiker*, 655 F.2d 604 (5th Cir. 1981)). On the other hand, where the claimant is represented by counsel, as here, the ALJ is entitled to rely on the claimant's presentation of her case. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997); *Ferrari v. Comm'r of Soc. Sec.*, 1996 WL 549782, *1 (6th Cir. 1996) (Table) (holding that where claimant's counsel did not raise the issue of mental impairment at the administrative level, the issue whether the ALJ fully developed the record was waived); *Brandon v. Astrue*, 2010 WL 3723996, *7 (E.D. Tenn. Aug. 9, 2010) (noting that a represented claimant bears the burden to raise the issue she seeks to be developed). *See also Goldberg v. Kelly*, 397 U.S. 254, 270-71 (1970) (noting that "[c]ounsel [in an administrative hearing] can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally safeguard the interests of the recipient").

In any case, whether or not the claimant is represented, the ALJ's duty is not endless. When the ALJ has sufficient evidence to make the necessary findings, the duty to develop a "full" record is satisfied. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1172 (6th Cir. 1990) (holding that the ALJ adequately developed the record where it was not shown that "further questioning . . . would have enhanced [the] determination of disability"); *Ortiz v. Comm'r of Soc. Sec.*, 2010 WL 2927179, *7 (N.D. Ohio 2010) (noting that the ALJ's questions should "elicit only necessary information"). *See also* Social Security Ruling ("SSR") 96-7p (requiring the adjudicator to "make every reasonable effort to obtain available information that could shed light on the

credibility of the individual's statements," but only "*[w]hen additional information is needed* to assess the credibility" of those statements) (emphasis added). Consequently, a brief hearing does not necessarily produce "unfair or unsupported conclusions." *Born*, 923 F.2d at 1172. Furthermore, because a claimant may waive her right to a hearing, the ALJ is not prevented from making credibility findings without the claimant's testimony. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir. 2006).

In light of these principles, the hearing in this case was not inadequate. Plaintiff's counsel did not give ALJ Soto any reason to believe there were other factual issues that needed to be explored. At the hearing, Plaintiff's counsel told ALJ Soto that her pre-hearing brief contained Plaintiff's arguments and the documents on which she was relying. Plaintiff was then sworn in, and her counsel had an opportunity to examine her. Had any additional explanation or testimony been required, her counsel could have elicited it then. Even assuming that ALJ Soto cut short the initial examination by interposing questions to the VE, Plaintiff's counsel had yet another opportunity to present evidence when ALJ Soto asked if there was anything else. Instead, Plaintiff's counsel replied, "Nothing, Your Honor." If Plaintiff's counsel felt she had been "slighted" in missing an "opportunity to elicit testimony fully" from her client, she could have done so at that time. *Oliver v. Apfel*, 2000 WL 34032755, *14 (N.D. Iowa 2000).

Plaintiff argues chiefly that ALJ Soto should have "fully" developed the record with respect to Plaintiff's credibility. She contends that because ALJ Soto did not elicit testimony regarding the intensity, persistence, and limiting effects of her symptoms, his finding that she was not credible is not based on a fully developed record. I **FIND**, to the contrary, that the ALJ had sufficient evidence to make a determination of whether Plaintiff's allegations of disabling pain were credible. Two

11

reviewing physicians, whose assessments are not contradicted in the record, opined that Plaintiff's complaints of pain were not fully supported by the objective medical evidence. Furthermore, the ALJ gave several reasons he believed it was "impossible to rely primarily on [Plaintiff's] subjective complaints," each of which is "supported by the evidence in the case record." *See* SSR 96-7p. As the ALJ noted, Plaintiff repeatedly told Dr. Miller that her pain medications did not cause her any side effects, but her primary allegation of disability was based on her impaired judgment and inability to drive due to pain medications. In addition, one reviewing physician questioned whether narcotic pain medications were necessary at all. Similarly, while Plaintiff consistently told Dr. Miller that her pain did not significantly interfere with her daily activities, she told the agency that she was able to perform no daily activities whatsoever. Finally, the ALJ acknowledged she had been injured in the car accident, but as reflected in Dr. Apyan's notes, he found that she improved quickly. Plaintiff was left, therefore, with her chronic complaints of bursitis and arthrosis, which had been present before the accident. As the ALJ noted, however, those complaints did not prevent her from working in 2002, when she was receiving treatment for them. I therefore **CONCLUDE** that the ALJ's credibility assessment was based on substantial evidence.

  **B.**  **Did the Hearing Violate Plaintiff's Due Process Rights?**

While the hearing did not violate agency regulations, Plaintiff also argues that she was denied due process. While Plaintiff's constitutional argument is premised on the same facts as her regulatory argument, the analyses are somewhat different. Whether the ALJ properly developed the record requires an "examin[ation of] each case on its own merits." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). On the other hand, "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the *generality* of

cases . . . ." *Mathews*, 424 U.S. at 344 (emphasis added). In other words, whether a procedural safeguard is required by due process depends not on whether the safeguard would have produced a more accurate result in *this* case, but on whether in the *typical* case, the value of the safeguard outweighs its cost. *Id.* at 335.

While the specific safeguards required in different types of cases will vary, they fall into five main categories: notice, an opportunity to be heard, the assistance of counsel, a decision based on the legal rules and evidence by a neutral decisionmaker, and an explanation of that decision. *See generally Goldberg*, 397 U.S. at 267-71. Here, as noted above, Plaintiff contends she was deprived of the right to be heard in a meaningful manner. Plaintiff is correct that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Furthermore, to be "meaningful," "[t]he opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg*, 397 U.S. at 268-69. No decision cited by Plaintiff, however, requires more than a meaningful *opportunity* to be heard.[6] *See Boddie v. Connecticut*, 401 U.S. 371, 378-79 (1971) (stating that the constitutional right to be heard may be waived); *Hollon*, 447 F.3d at 490.

Plaintiff has not articulated the procedural safeguard she should have received, but it appears she seeks something more than the mere "opportunity" to be heard. As explained above, Plaintiff had such an opportunity. Her counsel at the hearing could have examined her about any material

---

[6] Even in *Goldberg*, which represents the high-water mark for procedural protections required in an administrative hearing, the Court stated only that "where credibility and veracity are at issue, . . . written submissions are a wholly unsatisfactory basis for decision. . . . [and] a recipient must be *allowed* to state his position orally." 397 U.S. at 269 (emphasis added).

13

issue. *See* 20 C.F.R. § 404.944. Furthermore, as explained above, the ALJ had sufficient information to make his findings without Plaintiff's testimony. To succeed on her due process claim, Plaintiff must argue that something more was required of the ALJ—i.e., that the ALJ should have asked Plaintiff about her subjective complaints despite her counsel's failure to do so. Stated as a general procedural safeguard, then, Plaintiff asks for a rule requiring the ALJ to elicit testimony from a claimant whenever her credibility is at issue, regardless of whether her counsel does so, and regardless of whether the ALJ already has enough information to make a credibility determination. The value of such a rule is hard to assess, but it is not at all self-evident that it would result in fewer erroneous denials of disability benefits.[7] On the other hand, the rule's cost would be high; by definition, it would lengthen hearings beyond what is necessary, exacerbating the backlog of disputed social security claims.[8] *See Heckler v. Day*, 467 U.S. 104, 112-13 (1984) (describing the heavy caseload). Accordingly, I **CONCLUDE** that requiring more of the ALJ than is already required by the regulations would increase costs in excess of any speculative benefits, even in light of the important private interest at stake.

---

[7] It might be argued that live testimony will always aid the ALJ's credibility determination, but "despite much lore to the contrary, it appears that it is actually more difficult to assess the credibility of oral than of written testimony." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

[8] This rule might also create a danger for claimants who have chosen for some reason not to testify on a particular subject. Inherent in a claimant's right to be heard is the right to present her arguments in the way she sees best. Furthermore, any danger that a claimant may not be capable of making informed choices in presenting her case is ameliorated by her right to be represented at the hearing, and the ALJ must ensure that the claimant is aware of that right. *See Johnson v. Comm'r of Soc. Sec.*, 97 F. App'x 539, 542 (6th Cir. 2004). Thus, the ALJ may properly assume a claimant's counsel will "present the factual contentions" and "safeguard [the client's] interest[s]." *Goldberg*, 397 U.S. at 270-71.

C.     **Completeness of the Record**

Finally, Plaintiff argues that the record is incomplete. She represents that the hearing transcript "ends in an abrupt manner," and that her attempts to further address ALJ Soto were not recorded. The Commissioner did not squarely respond to this allegation, and neither party cited any authority for the issue.

There are only two bases for remanding a claim under 42 U.S.C. § 405(g).[9] *Hollon*, 447 F.3d at 486. Under the fourth sentence of that paragraph, a court may remand the Commissioner's decision as either unsupported by substantial evidence or based on an incorrect legal standard. 42 U.S.C. 405(g) (empowering the court to remand the cause to the agency for rehearing after reversing the Commissioner's decision); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that the court must affirm the Commissioner's decision unless it is unsupported by substantial evidence or based on an incorrect legal standard). Under the sixth sentence of the paragraph, a court may remand when either the Commissioner requests it, for good cause, before filing his answer, or when the claimant presents new, material evidence and shows good cause for failing to present it earlier. 42 U.S.C. 405(g).

To determine whether a missing or incomplete administrative record can justify remand, the

---

[9] Plaintiff has suggested no other basis for review, and I **CONCLUDE** that the Social Security Act ("SSA") itself provides the exclusive means of reviewing Plaintiff's challenge. Essentially, Plaintiff challenges the conduct of the hearing—a procedural challenge, and in our circuit, social security disability hearings "must conform to" the requirements of the Administrative Procedure Act ("APA"). *Calvin v. Chater*, 73 F.3d 87, 91 (6th Cir. 1996) (*citing Mullen v. Bowen*, 800 F.2d 535, 536 n.1 (6th Cir. 1986)). A social security claimant, however, seeks review under section 405(g) of the SSA rather than the APA. *See Richardson*, 402 U.S. at 390, 409 (explaining that the SSA's requirements "do not vary" from those described in the APA, the latter being modeled on the former, and articulating the claimant's challenge as follows: "whether [certain evidence] may constitute 'substantial evidence' supportive of a finding of nondisability, within the [§ 405(g)] standard, when the claimant objects to" the adequacy of the evidence-gathering procedures).

court must first identify which type of remand is implicated. Where the claimant contends that there are missing medical records, the reviewing court should consider the claim under sentence six—i.e., asking whether the records are new and material, and whether there is good cause for having failed to bring them to the agency's attention. *See Hollon*, 447 F.3d at 483-85. Sentence six, however, is not well suited to Plaintiff's challenge here. It is difficult to characterize testimony missing from the transcript as "new" evidence, since the testimony necessarily existed during the administrative proceedings. Likewise, the "good cause" standard asks whether the claimant should have brought the evidence to the agency's attention sooner, but the crux of Plaintiff's challenge is that the evidence *was* before the agency, but the agency failed to include it in the record.

Consequently, where the claimant contends that the record submitted by the Commissioner "is not the full and complete record upon which the agency based its decision," or by extension, where the claimant contends that some procedural failure prevented the full development of the record, sentence four is the appropriate vehicle for remand. *See Hollon*, 447 F.3d at 484 n.8. Under sentence four, remand is appropriate if the Commissioner's decision is unsupported by substantial evidence, but to determine whether the Commissioner's findings are supported by substantial evidence, the court must consider the evidence relied on by the Commissioner in light of the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). A reviewing court can fulfill this obligation, of course, only if the record is "whole." *See Hollon*, 447 F.3d at 484 n.8; *Russell v. Comm'r of Soc. Sec.*, 32 F. App'x 737, 739 (6th Cir. 2002).

As a threshold matter, the claimant bears the burden to "persuade[] the district court . . . that specific identifiable original evidence was indeed omitted from the . . . record . . . ." *Hollon*, 447 F.3d at 484 n.8. *See also Hippensteel v. Soc. Sec. Admin.*, 302 F. Supp. 2d 382, 388-89 (M.D. Pa.

16

2001) (remanding where the plaintiff produced evidence that a substantial part of the hearing was not transcribed). Moreover, even if the claimant meets this burden, reversal of the Commissioner's decision (and consequently, remand) is appropriate only where this "specific, identifiable" evidence is "necessary for the court to satisfy its statutory obligation . . . to determine whether the Commissioner's decision is 'supported by substantial evidence.'" *Hollon*, 447 F.3d at 484 n.8. *See also Andres v. Bowen*, 870 F.2d 453, 456 (8th Cir. 1989) (holding that an incomplete or imperfect transcript may support remand where there is some indication that the absence of the missing portion either prejudiced the claimant or prevented fair judicial review). The *Hollon* court did not have occasion to delineate the circumstances in which missing evidence may be "necessary" to the court's review. However, the court did explain that the agency's failure to provide a complete record is a failure to follow the agency's own procedures. *Hollon*, 447 F.3d at 484 n.8 (citing 42 U.S.C. § 405(g), which requires the agency to "file a certified copy of the transcript of the record" with the court). Accordingly, to ask whether the missing evidence was "necessary" to the court's review is to ask whether its absence was prejudicial procedural error. *See Rabbers*, 582 F.3d at 654-55. Under *Rabbers*, therefore, this question turns on whether the agency's obligation to provide the court with a "certified copy of the transcript of the record" was intended to give the claimant a "substantial procedural right" or was instead intended to facilitate the orderly transaction of business when a claimant appeals an adverse decision. *See id.* at 655-56.

As the *Rabbers* court observed, the Sixth Circuit has found only one procedural requirement which confers a "substantial procedural right"—the obligation of the Commissioner to give "good reasons" for rejecting a treating physician's opinion. *See id.* at 655 (*citing Wilson*, 378 F.3d at 547). In contrast, the *Rabbers* court held that the ALJ's obligation to complete a "psychiatric review

17

technique form" ("PRTF")—essentially, a "rating" of the claimant's impairment in four functional categories—was merely an adjudicatory tool for assessing the severity of mental impairments. *Id. at 656*. Central to the court's analysis was the observation that the purposes of the "good reasons" rule were "independent" of the agency's decisionmaking process. *Id.* Specifically, the rule was intended to ensure that the ALJ actually gives the required deference to a treating physician's opinion and to ensure that the claimant is not "bewildered" at the agency's rejection of her doctor's opinion. *Id.* at 656-57. The PRFT, on the other hand, was intended merely to "help[] *us* [the agency]: (1) [i]dentify the need for additional evidence . . . ; (2) [c]onsider and evaluate the functional consequences [of the impairment]; and (3) [o]rganize and present our findings in a clear, concise, and consistent manner." *Id.* (*quoting* 20 C.F.R. § 404.1520a(a)). From these two examples, it is clear that a procedural rule does not confer substantial rights if it merely provides the mechanism for evaluating claims on the merits. There must be an intent to confer some "independent" benefit on the claimant herself.

Here, there is one obvious purpose behind the certified-copy rule. The record on which the agency's decision was based is within the control of the Commissioner, and it must be filed with the court before the merits of the claimant's appeal can be decided. *Villines v. Harris*, 487 F. Supp. 1278, 1281 (D.N.J. 1980) (noting that "if the plaintiff is to have a hearing on the merits, it is essential that the transcript which the statute commands be part of the answer, be filed."). *See also Bostic v. Harris*, 484 F. Supp. 686, 689 (D.W. Va. 1979) (observing that the Secretary's failure to file the transcript timely prejudiced the claimant, who "ha[d] a reasonable expectation that his claim w[ould] be handled with at least minimum efficiency and speed."). The undersigned perceives no indication that the filing of a certified copy was intended to confer a substantial procedural right on the

claimant. Unlike the "good reasons" rule, the certified-copy requirement does not ensure that the Commissioner will give deference to the Plaintiff's proffered evidence, because the decisionmaking process is over before the requirement is even triggered. Nor does the certified-copy requirement ensure that the claimant is not "bewildered" at the disposition of her claim. The record itself is merely a compilation of the evidence considered; it is the Commissioner's written decision that explains how the claim was decided. I **CONCLUDE** therefore that the procedural requirement of filing a record with the court does not confer a "substantial procedural right." Accordingly, an incomplete or imperfect transcript can justify remand only if the claimant was prejudiced on the merits. *See Rabbers*, 582 F.3d at 657-58. A procedural error is not prejudicial where it is clear from the record that, even had the correct procedures been employed, the ALJ would have made the same decision.[10] *See id.* at 657-58.

Here, Plaintiff's allegation that the record is incomplete are unavailing because she has not met her threshold burden to identify specific evidence missing from the record. She represents that she attempted to further address ALJ Soto, but she has not shown what prevented her from doing so or what evidence she would have presented if she had been allowed to. Plaintiff's failure to make this threshold showing prevents the Court from assessing whether the evidence might be

---

[10] A procedural error is not harmless merely because the Commissioner's decision is otherwise supported by substantial evidence. *Rabbers* specifically held that an ALJ's decision will be reversed when it prejudices the claimant on the merits, "*even if supported by substantial evidence*." 582 F.3d at 651 (emphasis added). Substantial evidence review "presupposes there is a zone of choice within which the decisionmakers can go either way . . . ." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). If the reviewing court were permitted to affirm any outcome that *could have* been supported by the evidence, it "'would propel [the court] into the domain which Congress has set aside exclusively for the administrative agency.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Instead, an error is harmless only when the ALJ "*would have*" made the same decision. *Rabbers*, 582 F.3d at 658 (emphasis added).

"necessary," or stated differently, whether the ALJ would have made the same decision even if the evidence had been made a part of the record. Consequently, I find no error in the completeness of the record, and I **CONCLUDE** that the Commissioner's decision is supported by substantial evidence in light of the record as a whole.

## III. CONCLUSION

For the foregoing reasons, I **RECOMMEND:**[11]

(1) Plaintiff's motion for summary judgment [Doc. 12] be **DENIED**;

(2) Defendant's motion for summary judgment [Doc. 17] be **GRANTED**;

(3) The Commissioner's decision denying benefits be **AFFIRMED;** and

(4) This action be **DISMISSED WITH PREJUDICE**.[12]

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[11] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

[12] This document contains hyperlinks to other documents. Such links are provided for the user's convenience only, and the Court does not guarantee their functionality or accuracy. Any link which directs the user to a document other than the document cited in the text will not supersede the textual citation. The Court does not endorse the content of, or any provider of, any document maintained by any other public or private organization.